# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ROBERT CALLENDER II,

    Plaintiff,

v.

DELTA AIRLINES, INC.,

    Defendant.

Case No. 2:14-cv-02199-KJD-PAL

**ORDER**

Presently before the Court is Defendant's Motion for Summary Judgment (#55). Plaintiff filed a response (#57/61 as amended) to which Defendant replied (#60).

I. Background

Robert Callender II ("Plaintiff") began working for Delta Airlines, Inc. ("Defendant") on or about August 20, 2009. Defendant hired Plaintiff as a Ramp Agent, whose duties included loading and unloading baggage from aircrafts. Beyond his Ramp Agent title, Plaintiff also received additional Agent In Charge ("AIC") training regarding the importance of weight and balance during airplane flight.

During the time Defendant employed Plaintiff, Plaintiff developed an extensive disciplinary record. On multiple occasions, Plaintiff received formal notice that his job performance, specifically his pervasive tardiness, deteriorating attendance, inappropriate and unprofessional behavior, failure

to follow ramp procedures, and driving on the job without a driver's license after receiving a DUI conviction, was unacceptable.

On July 8, 2013, Plaintiff was assigned in his role as a Ramp Agent to Flight 919, inbound from Atlanta to Las Vegas, then traveling outbound to Minneapolis as Flight 1538. Fellow Ramp Agent Yariel Penalver and AIC Kevin Dalton were also assigned to Flight 919. It was standard procedure for Ramp Agents and AICs to check all bins when unloading a plane. Plaintiff, together with Penalver and Dalton, failed to unload ninety-five bags from Flight 919, causing customer dissatisfaction and potential safety issues due to the unforseen weight imbalance.

Brian Hosking was a Customer Service Agent in Delta's Operations Department. On July 8, 2013, while working in Operations, Hosking received a call from the Baggage Service Office informing him some baggage from Flight 919 was missing. Hosking called Dalton on the radio to inquire further, but received no response. Dalton then walked into Operations, unsure of whether he and his team had checked the forward luggage compartment.

Dalton, Penalver, and Plaintiff were all terminated for their roles in the Flight 919 incident. Hosking was not terminated, and it is unclear from the record whether he received formal probation for not doing all he could to correct Dalton, Penalver, and Plaintiff's Flight 919 mistake.

Plaintiff appealed his termination to the EO Department, who denied Plaintiff's appeal, and upheld the termination. On August 2, 2014, Plaintiff filed a claim with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). On September 24, 2014, the EEOC dismissed Plaintiff's claim, stating it was unable to conclude whether the information Plaintiff alleged established violations of relevant statutes. Plaintiff then filed the present action. Plaintiff, who is African-American, claims Defendant terminated his employment on the basis of his race, alleging that Hosking, who is Caucasian, received more favorable treatment than he did.

//

II. Analysis

    A. Pro Se Litigant Legal Standard

The Court notes that Plaintiff is *pro se*, meaning that his submissions to the Court are "to be liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Accordingly, the Court will liberally construe Plaintiff's pleadings.

However, liberal construction of *pro se* pleadings does not excuse *pro se* litigants from adhering to the rules of procedure. See U.S. v. Merrill, 746 F.2d 458, 465 (9th Cir. 1984). "Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The Court accepts Plaintiff's First Amended Response to Defendant's Motion for Summary Judgment (#61). However, Plaintiff's Second Amended Response to Defendant's Motion for Summary Judgment (#66) is untimely, and justice does not require the Court to consider it. See Fed. R. Civ. P. 15(a).

    B. Summary Judgment Standard

The Court may grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The Court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy." O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

### C. Disparate Treatment Standard

It is unclear whether Plaintiff intends to bring a disparate treatment claim under 42 U.S.C. § 2000e-2(a)(1) ("Title VII") or 42 U.S.C. § 1981 ("§ 1981").[1] Regardless of which was Plaintiff's intended statutory vehicle, the Court applies the same burden shifting framework to disparate treatment claims asserted under both Title VII and § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). Under this framework, Plaintiff must first establish a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 792 (1973). This prima facie showing creates a presumption of discrimination, and the burden shifts to Defendant to rebut it by

---

[1] Plaintiff's Complaint (#3) states his claims "arise under Title VII of the Civil Rights Act," but also states his "FIRST CAUSE OF ACTION" is "Race Discrimination/Disparate Treatment in violation of § 1981."

4

producing evidence of a legitimate, nondiscriminatory reason for any adverse employment action. See Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1042 (9th Cir. 2017). If Defendant satisfies that burden, Plaintiff must then prove that the reason advanced by the employer was mere pretext for unlawful discrimination. See Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008). Ultimately, "the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination." Douglas v. Anderson, 656 F.2d 528, 532 (9th Cir. 1981).

### 1. Prima Facie Case

To establish a prima facie case of discrimination, Plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Plaintiff may use either direct or circumstantial evidence, and "the amount [of evidence] that must be produced in order to create a prima facie case is very little." Sischo-Nownejad v. Merced Cmty. College Dist., 934 F. 2d 1104, 1111 (9th Cir. 1991). In order to establish a prima facie case of disparate treatment, Plaintiff must show: (1) he belonged to a protected class; (2) he performed his job duties satisfactorily;[2] (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

#### a. Callender and Hosking are not similarly situated.

There is no genuine issue of material fact as to whether Callender and Hosking are similarly situated— they are not. "In order to show that [an] employee[] allegedly receiving more favorable treatment [is] similarly situated . . . , the individual[] seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." Moran v. Selig,

---

[2] While not noted by Defendant, there is compelling argument that Plaintiff has not put forth sufficient evidence to eliminate the possibility that he was terminated for failure to perform his job duties satisfactorily, which would also defeat Plaintiff's prima facie case. A plaintiff may not "create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted." Cornwell v. Electra Cent. Credit Union, F.3d 1018, 1029 n. 6 (9th Cir. 2006). Plaintiff puts forth no evidence to disprove that grounds to terminate him did not already exist prior to the July 2013 incident.

5

447 F.3d 748, 755 (9th Cir. 2006). For example, a plaintiff may put forth evidence that employees in question had materially similar job titles and responsibilities. See id. Additionally, employees with different disciplinary histories, regardless of whether they hold the same position, are not likely materially similar. See Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003); see also Johnson v. Western Hotel & Casino, 2011 WL 4963039 (D. Nev. Oct. 19, 2011) at *6 ("[W]here one employee's disciplinary history is more serious and extensive than the other, the employees are generally not similarly situated.").

### i. Plaintiff and Hosking have different jobs and vastly different disciplinary histories.

Plaintiff and Hosking are not similar in "all material respects." Moran, 447 F.3d at 755. They had different job titles, and were performing very different duties in different locations during the specific July 2013 incident that led to Plaintiff's termination. On July 8, 2013, Plaintiff was acting in his capacity as a Ramp Agent as part of the ground crew. His responsibilities included being on the ground, and loading and unloading baggage. Hosking was performing in his capacity as an Operations Agent in Operations— not working on the ground, and not a member of the Flight 919 ground crew.

Further, in Plaintiff's deposition, Plaintiff acknowledged more than ten disciplinary infractions during the four years Defendant employed him, including tardiness, failure to follow ramp procedures and safety rules, driving without a license both to and at work, and "deteriorating attendance" at work. Plaintiff had received multiple warning letters for his job performance including a "final warning," and had previously been placed on probation.

Apart from Hosking's alleged probation that resulted from the July 2013 incident itself, Plaintiff has not put forth any evidence that Hosking has been the subject of a single disciplinary action during his time as a Delta employee. Thus, Plaintiff and Hosking are not similarly situated.

### iii. Both Penalver and Dalton were also terminated.

Plaintiff provides no evidence to counter the condemning fact that along with Plaintiff, Penalver, a fellow Ramp Agent, and Dalton, the AIC, were also terminated for their roles in the Flight 919 incident. Neither Penalver nor Dalton are African-American; Penalver is Hispanic, and Dalton is Caucasian.

In contrast, in <u>Aragon v. Republic Silver State Disposal, Inc.</u>, the Ninth Circuit found a plaintiff put forth enough evidence to meet his prima facie burden of discrimination on the basis of race by showing that only white or white-looking employees were laid off, while non-white employees retained their jobs. <u>See</u> <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 660 (9th Cir. 2002). Termination decisions that align with race create the logical inference that such treatment may be based on race. <u>See</u> <u>id.</u>

Here, Plaintiff (African-American), Penalver (Hispanic), and Dalton (Caucasian), were all fired for their involvement in the same incident. This undisputed fact defeats the claim that Defendant's decision to terminate Plaintiff, given every possible inference, was in any way based on his race. Further, Defendant's decision to terminate Dalton and not Hosking, both of whom are Caucasian, shows Hosking was not afforded preferential treatment based solely or in part on his race. If that were the case, Dalton too would not have been fired; there is no discriminatory corollary.

Thus, Plaintiff's failure to put forth evidence to establish a prima facie case ends the analysis. The burden does not shift to the Defendant to show nondiscriminatory reasons for Plaintiff's termination.[3]

---

[3] However, Defendant correctly notes that even if the Court were to find that Callender and Hosking were similarly situated, the mere difference in Defendant's treatment of them alone does not create liability for race discrimination. The disparate treatment must be "on account of race," and Plaintiff has failed to put forth evidence that it was. <u>See</u> <u>McGinest v. GTE Service Corp.</u>, F.3d 1103, 1121 (9th Cir. 2004). The correctness or fairness of an employment decision is inconsequential as long as it was not based on illegal criteria or discrimination. <u>See</u> <u>Diaz</u>, 521 F.3d at 1214 n.7.

III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#55) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#58/62) is **DENIED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant Delta Airlines, Inc. and against Plaintiff Robert Callender II.

DATED this 5th day of September, 2017.

_____
Kent J. Dawson
United States District Judge